UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RUSTY COAL BLACKWATER and TRENT LANE BLACKWATER,<br><br>Plaintiffs,<br><br>v.<br><br>THE SECRETARY OF THE DEPARTMENT OF THE INTERIOR, through its Acting Assistant Secretary, BUREAU OF INDIAN AFFAIRS, its officers, servants, agents, employees, representatives, and attorneys,<br><br>Defendants. | Case No. 3:14-cv-00244-LRH-VPC<br><br>ORDER |

Rusty Coal Blackwater and Trent Lane Blackwater bring two motions before the court. The plaintiffs first move the court for an order compelling the Secretary of the Interior and the Bureau of Indian Affairs ("BIA") to enter into a stipulation and an order remanding to the BIA with instructions to place the plaintiffs onto the Western Shoshone judgment roll. ECF No. 18. The defendants responded but no reply was filed. ECF No. 19. The plaintiffs also move the court for an order of final judgment that approves the BIA's subsequent actions, prevents the disenrollment of the plaintiffs from the Western Shoshone judgment roll, and compels the payment of funds to the plaintiffs. ECF No. 25. The defendants opposed the motion, and the plaintiffs replied. ECF Nos. 26, 27. The court now denies both motions, finding the case is moot.

**I.    BACKGROUND**

The Western Shoshone Claims Distribution Act was passed in 2004. Pub L. 108-270, 118 Stat. 805. To make a claim for recovery under the Act, a person must be placed on the Western

1

Shoshone judgment roll. *Id.* To be placed on the judgment roll, the person must be at least ¼ blood quantum level of Western Shoshone. *Id.*

The plaintiffs applied to be placed on the judgment roll based on their heritage.[1] ECF No. 25. Their grandfather was Clinton Albert Williams, who was ½ blood quantum level of Western Shoshone. *Id.* Their grandmother was Betty Ann Thomas Williams, who was also ½ blood quantum level of Western Shoshone. *Id.* The BIA accepted the plaintiffs' applications and paid each plaintiff part of the sum owed. *Id.*

But the BIA later revoked the acceptance of the plaintiffs' applications and then rejected the applications, stating Betty Davis—rather than Betty Ann Thomas Williams—was the plaintiffs' grandmother and was not ½ blood quantum level of Western Shoshone. *Id.* The plaintiffs disputed the claim and provided documentation to show Betty Ann Thomas Williams was their grandmother. *Id.* The BIA still declined to reinstate the plaintiffs to the judgment roll. *Id.* Therefore, the "clerical error" that named Betty Davis as the plaintiffs' grandma prevented the plaintiffs from recovering under the Act. *Id.*; *see also* ECF Nos. 18, 25, 27 (plaintiffs describing the misnaming of Betty Ann Thomas Williams as a "clerical error").

The plaintiffs sued the defendants, alleging violations of due process, of equal protection, and of the Administrative Procedure Act. ECF No. 1. On the defendants' motion, the case was voluntarily remanded to the BIA. ECF No. 17. The BIA reconsidered the plaintiffs' applications and ultimately notified the plaintiffs in June 2016 that they were in fact eligible for placement on the judgment roll. ECF Nos. 25, 26.

But a year passed without the plaintiffs being placed on the judgment roll. *See id.* As a result, in October 2017, the plaintiffs moved the court for an order that compels the defendants to stipulate to placing the plaintiffs onto the judgment roll and an order directing the defendants to do so. ECF Nos. 18. The day after the plaintiffs moved for the order to compel the defendants into a stipulation, the plaintiffs were added to the judgment roll. ECF No. 19, 25–27.

/ / /

---

[1] The defendants do not dispute the facts in the plaintiffs' motion. *See* ECF Nos. 19, 26. The court therefore takes the facts from the plaintiffs' pending motions unless otherwise noted.

2

The plaintiffs did not receive the remaining funds owed to them as of November 29, 2017. ECF No. 25. The plaintiffs therefore moved for an order of final judgment. *Id.* The defendants opposed the motion. ECF No. 26.

## II. LEGAL STANDARD

A case no longer presents a case or controversy for Article III purposes and is therefore moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (quoting *Already, LLC v. Nike, Inc.*, 586 U.S. 85, 91 (2013) (internal quotation marks omitted)). But courts hesitate to declare a case moot when a party has voluntarily ceased the challenged activity. *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1179 (9th Cir. 2010). Courts hesitate to dismiss a case as moot based on a party's voluntary cessation of the challenged activity because a dismissal for mootness would allow the party to resume the challenged activity after the case was dismissed. *Rosebrock*, 745 F.3d at 971.

While the doctrine of mootness ordinarily considers the possibility of a party voluntarily ceasing the challenged activity in bad faith, the court must "presume the government is acting in good faith" if it is the party that voluntary ceases the challenged activity. *Am. Cargo Transp.*, 625 F.3d at 1180. But the government still "bears the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again." *Rosebrock*, 745 F.3d at 971.

"[A] policy change not reflected in statutory changes or even in changes in ordinances or regulations will not necessarily render a case moot … but it may do so in certain circumstances…." *Id.* (internal citations omitted). While a definitive test to determine mootness under circumstances involving voluntary cessation does not yet exist, five factors make mootness more likely: "(1) the policy change is evidenced by language that is broad in scope and unequivocal in tone; (2) the policy change fully addresses all of the objectionable measures that the government officials took against the plaintiffs in the case; (3) the case in question was the catalyst for the agency's adoption of the new policy; (4) the policy has been in place for a long time when [the court] consider[s] mootness; and (5) since the policy's implementation[,] the

3

agency's officials have not engaged in conduct similar to that challenged by the plaintiff." *Id.* at 972 (internal citations and punctuation marks omitted). Conversely, mootness is not likely when "the new policy could be easily abandoned or altered in the future." *Id.* (internal citations and punctuation marks omitted).

## III. DISCUSSION

The plaintiffs bring two motions before the court. ECF Nos. 18, 25. The court first resolves the motion for an order compelling the defendants to enter into stipulation. The court then resolves the motion for a final judgment.

### A. Motion for an Order Compelling a Stipulation

The plaintiffs first move for an order to compel the defendants to enter into a stipulation and to instruct the defendants to reinstate the plaintiffs to the judgment roll. But since filing their motion, the plaintiffs were added to the judgment roll. The court therefore denies this motion as moot.

### B. Motion for a Final Judgment

The court now turns to the plaintiffs' motion for a final judgment. In their motion, the plaintiffs request an order that (1) approves the BIA's decision to reinstate the plaintiffs to the judgment roll, (2) prohibits the BIA from disenrolling the plaintiffs from the judgment roll, and (3) compels the defendants to disburse the remaining owed funds to the plaintiffs. The defendants argue that the case became moot once the plaintiffs were reinstated to the judgment roll.[2] The court agrees with the defendants.

The case became moot when the issue presented by the plaintiffs was no longer live. The plaintiffs sued the defendants to reinstate their rights under the Act. Their rights were reinstated once they were added onto the judgment roll. The case therefore became moot once the plaintiffs were added to the judgment roll and regained their rights under the Act.

The court does not sway in its decision even though its finding results from the defendants voluntarily ceasing the challenged conduct, because the five considerations

---

[2] The defendants also argue that the plaintiffs lack the authority to move for an order granting the plaintiffs' requested relief, *e.g.*, a rule or statute. But the court will not address the argument based on the finding of mootness.

4

suggesting a finding of mootness favor the court's decision. On remand, the BIA completely reversed its finding that the plaintiffs were ineligible for placement on the judgment roll; the change addresses the plaintiffs' objections to the BIA's original finding of ineligibility; the BIA changed its decision in response to the initiation of this case; the BIA changed its decision nearly two years ago; and the plaintiffs do not provide any allegations that suggest the BIA has attempted to revoke the plaintiffs' eligibility since the change in the BIA's decision. Further, the challenge activity resulted from a "clerical error," which has now been resolved. Because the court presumes that the BIA changed its decision in good faith and finds little reason to doubt the BIA's change in its decision[3], the court holds that the defendants have met their burden of demonstrating mootness. The court therefore dismisses the case as moot.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Rusty Coal Blackwater and Trent Lane Blackwater's motion for an order compelling the defendants to enter into stipulation and order remanding to agency (ECF No. 18) is **DENIED as moot.**

IT IS FURTHER ORDERED that Rusty Coal Blackwater and Trent Lane Blackwater's motion for a final judgment (ECF No. 25) is **DENIED.**

IT IS FURTHER ORDERED that the case be **DISMISSED as moot**.


IT IS SO ORDERED.

DATED this 8th day of February, 2018.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

---

[3] The court acknowledges that the parties dispute whether the payment information has been received by the plaintiffs. *See* ECF Nos. 26, 27. But the court does not believe the two-month old dispute suggests the BIA will revoke the acceptance of the plaintiffs' applications again. However, if the BIA does revoke its current decision, the plaintiffs may pursue relief in a new suit. *See Rosebrock*, 745 F.3d at 974 (recognizing the lack of procedural safeguards that would prevent the challenged activity from resuming but stating the plaintiffs' right to pursue relief in a new suit if the activity were to resume).